OPINION
Plaintiff-appellant Burrell Industries, Inc., fka Spring Industries, Inc., appeals the September 8, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas which granted summary judgment against it. Defendant-appellee is the State of Ohio Department of Transportation.
 STATEMENT OF THE FACTS AND CASE
From the mid 1950s through the mid 1990s, appellant operated a sand and gravel extraction operation, and asphalt manufacturing operation in Midville, Ohio. Appellant owned several acres of property and leased additional adjacent acres from Bank One for asphalt manufacturing operations. Additionally, appellant had a lease from Bank One for mineral extraction, enabling it to remove sand and gravel from approximate 300 acres. The lease permitted appellant to extract minerals subject to royalties based upon the amounts extracted.
At some during point during the early 1990s, a dispute arose between Bank One and appellant over the renewal of the leases. In an effort to find another tenant if the lease with appellant was not renewed, Bank One performed a Phase I Environmental Assessment to determine if the property posed an environmental risk. The assessment revealed the property was likely contaminated by TCE.
In October, 1994, Bank One sued appellant in federal court pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). Bank One claimed appellant had contaminated the property and demanded remediation. In 1996, Bank One sued appellant in the Tuscarawas County Court of Common Pleas, claiming appellant had failed to pay royalties. During the litigation of these two cases, appellant brought a third party claim against appellee herein, claiming if the property had been contaminated with TCE, appellee was liable to appellant for having caused the contamination.
In response to the litigation, appellee conducted an investigation through Sharp Associates, and Bank One conducted an investigation through its expert, Burgess Niple. Shortly after the close of discovery in the federal litigation, the United States District Court for the Northern District of Ohio dismissed appellee herein from the federal litigation on the grounds of sovereign immunity.
In June, 1997, appellant and Bank One reached a settlement in both the federal litigation and in the Tuscarawas County case. The settlement was reduced to writing. According to the terms of the settlement, appellant agreed to purchase 11 acres of the property previously held by Bank One and leased to appellant. The property included areas believed to be contaminated. Pursuant to the settlement agreement, appellant paid Bank One $527 per acre for a total of $5,797 of the entire property. Bank One retained its right to recover the costs of the work performed by Burgess Niple on its behalf.
On November 20, 1997, appellant filed a complaint in the Tuscarawas County Court of Common Pleas, alleging appellee contaminated the subject property with the release of TCE. As a result of this contamination, appellant alleged it had incurred, and would continue to incur, costs for a Voluntary Action Cleanup pursuant to R.C. Chapter 3746. Appellant also filed an identical complaint against appellee in the Ohio Court of Claims.
In a September 14, 1998 Judgment Entry, the Tuscarawas County Court of Common Pleas granted appellee's motion to dismiss, finding it lacked jurisdiction. Appellee appealed that dismissal to this Court. In a March 16, 1999 Opinion and Judgment Entry, we reversed the trial court's dismissal, finding the court of common pleas had jurisdiction to determine a cause of action brought under R.C. 3746.
In December 1998, appellant sold all of its Midville property, including the 11 acres acquired pursuant to the settlement with Bank One, to MM Midville, Inc., an unrelated corporation, for $200,000. Appellant had not cleaned up or otherwise addressed the alleged contamination of the property at the date of sale. Further, appellant has not entered into agreements with any other entity to obligate it to clean up or remediate the property in the future. As of the date of the motion for summary judgment, appellant had not been sued by anyone seeking to force it to cleanup the property nor had any claim been made against appellant for injuries relating to any alleged contamination. The only environmental investigations on the property were undertaken, and paid for, by Bank One and appellee.
On remand, pursuant to this Court's March 16, 1999 Judgment Entry, the trial court set a case management schedule and the parties conducted discovery. On August 15, 2000, appellee filed a motion for summary judgment.
In its motion for summary judgment, appellee maintained appellant never commenced a "voluntary action" under R.C. 3746, to clean up or remediate the property. Therefore, any potential recovery permitted by the statute did not apply. Further, appellee maintained appellant did not have a contribution claim as it had not incurred any cost associated with a "voluntary action."
In a September 8, 2000 Judgment Entry, the trial court granted appellee's motion for summary judgment and dismissed appellant's complaint. The trial court found appellant had not commenced a voluntary action pursuant to R.C. 3746.23(A); appellant did not have a contribution claim against appellee; and appellant could not recover damages pursuant to R.C. 3746.23(A) for future clean up costs, future loss of business, future litigation costs, diminution in the value of the property, and loss of the optimum purchase price for past sale of their property. It from this judgment entry appellant prosecutes this appeal, assigning the following as error:
 I. THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT ON BURRELL'S VAP CLAIM WHERE THE AFFIDAVITS DEPOSITION TESTIMONY AND DOCUMENTARY EVIDENCE CREATED GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER [APPELLANT] HAD COMMENCED A "VOLUNTARY ACTION" AS DEFINED IN OHIO'S VOLUNTARY CLEANUP OF CONTAMINATED PROPERTY STATUTE (VAP).
 II. THE TRIAL COURT ERRED IN ITS INTERPRETATION OF VAP R.C. 3746 ET SEQ. AS TO THE TYPES OF DAMAGES RECOVERABLE.
 I
In appellant's first assignment of error, it maintains the trial court erred in granting summary judgment when genuine issues of material fact existed as to whether appellant had commenced a "voluntary action" pursuant to R.C. 3746. Specifically, appellant points to the testimony of Glen F. Straub, Appellant's President and Chief Executive Officer; the Burgess Niple Phase II Environmental Site Assessment and Expert Report; and the affidavit of Mr. Straub. Appellant maintains the factual evidence contained in Mr. Straub's testimony and affidavit, along with the expert reports, create genuine issues of material fact as to whether appellant commenced a voluntary action pursuant to R.C. 3746. We disagree.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
R.C. 3746.23 governs the recovery of cleanup costs. The statute provides, in relevant part:
 (A) As used in this section, "costs of conducting the voluntary action" means the costs incurred for performing a voluntary action that are cost effective and reasonably necessary to protect public health and safety and the environment, including, without limitation, the costs for all of the following:
 (1) Identifying potential sources of contamination of the property by hazardous substances where a voluntary action is being or was undertaken under this chapter and rules adopted under it;
 (2) Investigating the nature and extent of contamination of the property by hazardous substances in order to screen and select remedial alternatives;
(3) Preparing a remedial plan for the property;
 (4) Conducting the remedial activities, including, without limitation, the future operation and maintenance costs of any engineering controls installed to contain or control the release of hazardous substances at or from the property;
 (5) The preparation and submission of a no further action letter by a certified professional in connection with the voluntary action;
 (6) Any oversight costs paid to the environmental protection agency;
 (7) Reasonable attorney's fees, court costs, and other expenses in connection with the action brought under this section.
 "Costs of conducting the voluntary action" does not include the costs of any work performed at the property to render it suitable for a higher use than its current use or its most recent demonstrable use that is in addition to the work that is cost effective and reasonably necessary to protect public health and safety and the environment.
* * *
 (C) A civil action authorized by this section shall be commenced in the court of common pleas of the county in which is located the property at which the voluntary action is conducted. The person conducting the voluntary action may commence the civil action at any time after the person has commenced the conduct of the voluntary action. * * *
* * *
"Voluntary Action" is defined in R.C. 3746.01(O) as:
 * * * a series of measures that may be undertaken to identify and address potential sources of contamination of property by hazardous substances or petroleum and to establish that the property complies with applicable standards. "Voluntary action" may include, without limitation, a phase I property assessment * * *, a phase II property assessment * * *, a sampling plan, a remedial plan, or remedial activities followed by the issuance of a no further action letter under * * *
 R.C. 3746.10, which governs "Voluntary Actions" provides, in relevant part:
 (A) * * * any person may undertake a voluntary action under this chapter and rules adopted under it to identify and address potential sources of contamination by hazardous substances or petroleum of soil, sediments, surface water, or ground water on or underlying property and to establish that the property meets applicable standards. The voluntary action may include any one or more of the following elements:
(1) A phase I property assessment * * * ;
(2) A phase II property assessment * * *;
(3) A sampling plan;
(4) A remediation plan;
(5) Remedial activities;
 (6) Such other activities as the person undertaking the voluntary action considers to be necessary or appropriate to address the contamination.
(Emphasis added).
Appellant maintains Mr. Straub testified in his deposition as to the costs incurred to tear down structures which had been exposed to the contaminate. In addition, appellant points to the Burgess Niple Phase II reports which set forth the nature and scope of the TCE contamination and projected costs for such remediation. Finally, appellant notes Mr. Straub testified with regard to the legal expenses incurred in this action.
In its motion for summary judgment, appellee pointed to record evidence to indicate no voluntary action cleanup work had been performed by appellant on the Midville property. Further, appellant did not investigate the condition of the property nor had it hired any consultant to investigate the environmental condition of the property for purposes of performing a voluntary action. Appellee also pointed to record evidence revealing appellant acknowledged the tearing down of the building at the property was not part of a covered voluntary action cleanup, but rather was undertaken to make the property more attractive to potential buyers. Finally, appellant did not incur any cost relative to the Burgess Niple II reports, nor were the reports prepared at appellant's request.
Our review of the statute indicates before an entity may be entitled to compensation for a voluntary action, that entity must "undertake" the voluntary action. See, R.C. 3746.10. Because appellant failed to undertake any voluntary action, we agree with the trial court appellant was not entitled to recover damages for the costs for conducting the voluntary action.
Appellant's first assignment of error is overruled.
 II
In appellant's second assignment of error, it maintains it is entitled to damages for diminution in the property value, future cleanup costs, and litigation costs. We disagree.
As noted above, R.C. 3746.23 permits recovery for costs of conducting a voluntary action. For the same reasons set forth in our analysis of appellant's first assignment of error, we find appellant's second assignment of error to be without merit. As noted in appellant's first assignment of error, appellant did not conduct a voluntary action. Accordingly, it cannot now claim damages which did not arise from its costs of conducting the voluntary action.
Appellant also maintains it is entitled to the future cleanup costs and litigation costs. We disagree. Any future cleanup costs are inherently speculative. Even though experts have prepared reports estimating potential cleanup costs, appellant is in no way, at this time, liable for such cleanup costs. Further, because appellant sold the property, appellant would be unable, without the permission of the new owners, to actually conduct any such cleanup. Accordingly, this portion of appellant's second assignment of error is overruled.
R.C. 3746.23(A) limits recovery to the costs of conducting the voluntary action to the "costs incurred for performing a voluntary action that are cost effective and reasonably necessary to protect public health and safety and the environment." Diminution in value does not fall under this definition.
Appellant's second assignment of error is overruled.
The September 8, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas is affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the September 8, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant.
 ______________________________ By: Hoffman, P.J.
Wise, J. and Boggins, J. concur.